# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>vs.<br><br>ANTONIO CLARENCE ROBERTSON,<br>  Defendant. | Case No. 24-cr-31-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.    INTRODUCTION

On April 23, 2024, the Grand Jury returned an Indictment charging Defendant with one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).  (Doc. 3.)  The matter before me is Defendant's motion to suppress.  (Doc. 21.)  The motion was filed on November 8, 2024, and contained an inventory of items to be suppressed.  (*Id*.)  The Government timely filed a response on November 15, 2024.  (Doc. 23.)  Defendant filed a reply on November 21, 2024.  (Doc. 24.)  The Honorable C.J. Williams, Chief United States District Court Judge, referred the motion to me for a Report and Recommendation.  I held a hearing on Defendant's motion to suppress on November 22, 2024.  (Doc. 26.)  At the conclusion of the hearing, I offered the parties the opportunity to file post-hearing briefs.  On December 6, 2024, each party filed a supplemental brief.  (Doc. 27 and 28.)

The motion arises from a traffic stop that occurred on December 21, 2023, in Cedar Rapids, Iowa.

Defendant moves to suppress any evidence obtained from the allegedly unlawful search of his vehicle on December 21, 2023.  (Doc. 21-1.)  Evidence he seeks to suppress

1

includes all controlled substances seized from his person or from the vehicle, photographs of the seized evidence, and his statements to authorities.

At the hearing, the Government's Exhibits 1-2 were admitted without objection:

1. Photograph of parking lot and

2. Iowa DOT Driver's License Manual.

Defendant's Exhibits A-C were also admitted without objection:

A. Photograph of parking lot;

B. Photograph of parking lot; and

C. Google street view map.

The Government called Cedar Rapids Police Department Patrol Sergeant Michael Merritt. I found Sgt. Merritt to be credible. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II.    FINDINGS OF FACT

Sgt. Merritt testified that he is a graduate of the Cedar Rapids Police Academy. He has been with the Cedar Rapids Police Department for 9½ years. Of that time, he spent four years with the Police Community Action Team ("PCAT") and the last six months as a patrol sergeant. He had previous experience with the Chicago Police Department.

On December 21, 2023, Sgt. Merritt was still part of PCAT, a group of officers principally assigned to respond to serious incidents like shootings, shots fired, car chases, and robberies. As part of his duties, he was patrolling near Jim's Foods, a convenience store in Southwest Cedar Rapids. Jim's Foods is one of four businesses on the west side of Sixth Avenue SW[1] that share a common parking lot. Sgt. Merritt testified that the parking lot in question is privately owned. The parking lot extends the length of the

---

[1] All addresses referenced herein are in the SW quadrant of Cedar Rapids, Iowa.

Case 1:24-cr-00031-CJW-MAR    Document 31    Filed 01/02/25    Page 2 of 22

block between 8th Avenue and 9th Avenue. The parking lot can be accessed from the north from 8th Avenue and from the south from 9th Avenue. The dispute in this case, however, involves a vehicle exiting the parking lot by making a left turn onto 6th Avenue after crossing a sidewalk and the southbound lanes of 6th Street to head north. The sidewalk runs parallel to 6th Street between 6th Street and the parking lot, separated from the street by a curb and a grass strip. A wide, shallow-sloped driveway apron crosses the sidewalk to permit vehicular traffic to enter and exit the parking lot. (Gov. Ex. 1.) There is no traffic control device (e.g., stop sign or yield sign) at this exit from the parking lot. (Merritt Hr'g Test. at 17.) Sgt. Merritt testified that the parking lot is reserved for private businesses there and that "[i]f someone were traveling . . . [on] . . . Sixth Street, they couldn't drive into that parking lot to attempt to bypass traffic." (*Id.*)

As Sgt. Merritt and his partner, Officer Green, approached the 6th Street and 8th Avenue intersection, they observed a man, later identified as BM, walking from a residence toward Jim's Foods and interacting with vehicles parked at the north side of the building. The residence was known for narcotics activity. Sgt. Merritt noticed a red Chevy Cruz with multiple occupants near the building, facing 6th Street. BM also interacted with the occupants of a truck parked on the north side of Jim's Foods before entering the back seat of the Chevy Cruz. Sgt. Merritt and Officer Green turned into the lot and pulled up behind the Chevy. The Chevy started toward the exit on 6th Street, but then quickly parked in a spot in front of the store. BM then exited the Chevy's back seat, engaged in a hand-to-hand transaction with another male, and entered the store. Sgt. Merritt explained that narcotics sales are common in the area, and he believed it was possible that BM had exchanged narcotics for money with the other male.

Sgt. Merritt and his partner then moved their vehicle to continue surveillance from 9th Avenue. From this vantage point, they observed the Chevy Cruz back out of its parking spot in front of Jim's Foods and proceed to the "main entrance and exit." Before

the vehicle exited the parking lot, Defendant had behaved "unusually" by stepping partially out of the Chevy and looking around him. Sgt. Merritt testified that "the vehicle does not come to a complete stop prior to approaching the sidewalk or entering the roadway, so it just kind of rolls right out into the roadway." (*Id.* at 11.) Sgt. Merritt testified that he did not believe that any vehicular or pedestrian traffic was affected by the manner the Chevy exited the lot. (*Id.* at 17-18.) Sgt. Merritt and his partner then initiated a traffic stop based on the perceived violation of Iowa Code Section 321.353 that will be discussed *infra*. Sgt. Merritt believed that the exit from the parking lot constitutes an exit from a "private driveway" under the statute and, therefore, the driver was required to stop before "going over the sidewalk or entering a public roadway." (*Id.* at 18.)

The stop occurred north of Jim's Foods in the parking lot of a Casey's convenience store. Sgt. Merritt spoke with the driver, identified as JM. Officer Green spoke with Defendant. Sgt. Merritt could overhear Officer Green confront Defendant about attempting to conceal something. Officer Green noted Defendant's chest was pounding at a rapid rate and Sgt. Merritt noted Defendant was sweating profusely. Sgt. Merritt was familiar with Defendant from prior interactions and Defendant was usually calm, cooperative, polite, and joking. His behavior during this encounter was uncharacteristically agitated.

The officers requested permission to search the vehicle from the driver and received it. Officers instructed Defendant to exit the vehicle multiple times, but he refused. When officers pulled Defendant from the car, they found a pill bottle containing a large number of prescription pills where he had been seated and where Officer Green suspected Defendant had attempted to conceal it. Defendant also had a bag of the same pills in his pocket. Later he was found to have marijuana concealed on his person.

The driver was issued a warning for "unsafe entry" onto 6th Avenue. Sgt. Merritt believes he and his partner have issued citations for violations such as this more than 20 times. Officers directed Defendant to contact Investigator Jupin by 10:00 a.m. the next day and Defendant was told law enforcement would pursue a federal prosecution relating to the controlled pills that had been located. At the time of the stop, Defendant was charged only with possession of marijuana. Defendant later contacted Investigator Jupin. Sgt. Merritt testified that the stop was based solely on the traffic infraction and that he did not believe he had probable cause to stop the vehicle based on suspicion of drug trafficking. Defendant was not advised of his *Miranda* rights by law enforcement on the day of the stop.

## III.    DISCUSSION

### A.    *Parties' Arguments*

Defendant contends his Fourth Amendment right to be free of unreasonable seizures was violated by the traffic stop because law enforcement lacked probable cause or reasonable suspicion that a crime was committed. Defendant argues the legality of the stop turns on whether law enforcement had probable cause based on an alleged violation of Iowa Code Section 321.353 which provides:

> 1. The driver of a vehicle emerging from a private roadway, alley, driveway, or building shall stop such vehicle immediately prior to driving onto the sidewalk area and thereafter the driver shall proceed into the sidewalk area only when the driver can do so without danger to pedestrian traffic and the driver shall yield the right-of-way to any vehicular traffic on the street into which the driver's vehicle is entering.
> 2. The driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop such vehicle immediately prior to driving on said highway and shall yield the right-of-way to all vehicles approaching on said highway.

Defendant posits that the Chevy Cruz emerged from a roadway, alley driveway, or building that was not "private" and, therefore, the statute did not require it to stop. As

5

Defendant puts it, "Subsection (1) is obviously aimed at drivers who enter sidewalks from private places that are not open to the public for vehicular traffic" and "subsection (2) applies to vehicles 'about to enter or cross a highway from a private road or driveway.'" (Doc. 21-1 at 2.) Defendant cites in support of this position cases describing the duty created by Section 321.353 to stop and yield when emerging from a private lane.

Defendant argues no traffic violation occurred "[b]ecause the business parking lot was open to the shopping public for vehicular traffic, it was not a 'private road or driveway.'" (*Id.* at 7.) Thus, Defendant reasons, officers lacked probable cause for the stop. Although Defendant acknowledges that probable cause could be based on a reasonable but mistaken understanding of the law, he argues that no objectively reasonable view of Iowa law could read the statute in question to require the driver of the Chevy Cruz to stop.

Defendant asserts that, in addition to the contraband seized on the day of the stop, Defendant's subsequent statements must be suppressed as fruit of the poisonous tree.

The Government argues the stop was supported by probable cause to believe Iowa Code Section 321.353 was violated. The Government cites authority for the proposition that a parking lot of a private restaurant is not a public highway and that the definition of "private road" or "driveway" in Iowa Code Section 321.1(54) is broad enough to include a parking lot such as the one in question. The Government argues that while the public has implied permission of the lot's owner to be there for business purposes, the lot is not a street or highway.

The Government argues that even if the officers who made the stop were mistaken about the law, that mistake was an objectively reasonable one. The Government points to the Iowa Driver's Manual published by the Iowa Department of Transportation which instructs drivers to always stop when emerging from a parking lot onto a public road. (Ex. 2.)

6

In reply, Defendant notes the Government has not identified any basis for the stop except the alleged violation of Iowa Code Section 321.353. Defendant focuses again on the definition of "street" and "highway" which he notes are defined as "the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic." Iowa Code § 321.1(78). Defendant points to the fact that the Jim's Foods parking lot is always open for vehicular traffic, the owner appears to be encouraging such access, and the lot can be used to travel from one street to another. Defendant then uses these characteristics in an effort to distinguish cases relied on by the Government to establish that the parking lot is not a public street or highway.

In his post-hearing brief, Defendant reiterates his assertion that the parking lot is not private but rather open to public without restriction. Defendant cites authorities supporting the proposition that the adjective "private" in Section 321.353(1) should be read to modify all the nouns that follow, i.e., "roadway, alley, driveway, or building." Defendant argues further that the Chevy Cruz's entry onto 6th Street was not unsafe, despite the warning issued to the driver, because the entry did not affect vehicular or pedestrian traffic. Defendant also takes issue with Sgt. Merritt's characterization of the parking lot as a "private drive" because its use is unrestricted. Defendant returns again to his characterization of the lot as "the width of a city block" with three exits/entrances to public streets. Finally, Defendant reiterates that the officers' mistake of law was not reasonable.

In its post-hearing brief, the Government argues that the Iowa Supreme Court decided this issue when it held that privately-owned property does not become a public highway "merely because the owners allow public use." (Doc. 28 at 1) (citing *State v. Sims*, 173 N.W.2d 127 (Iowa 1969)). The Government also points to *State v. Brown*, an unpublished Iowa Court of Appeals decision that relied on *State v. Sims* to hold a private

parking lot does not fall within the definition of "public street or highway" such that probable cause to believe an open container violation justified a search of a vehicle. *State v. Brown*, No. 13-2054, 2015 WL 4468841 (Iowa Ct. App. July 22, 2015).

The Government argues that a driver can violate Iowa Code Section 321.353 regardless of whether the entry onto the road caused any safety concern. The fact that the driver received a warning for "unsafe entry," the Government asserts, does not change the requirements for probable cause under Section 321.353.

Finally, it is worth noting the arguments that have *not* been made. The Government does not argue that there was another basis for probable cause to stop the vehicle, such as a controlled substance crime. Also, nowhere does the Government deny any statements made by Defendant were the fruit of the allegedly unlawful stop or argue that they were somehow attenuated from the stop.

**B.    *Relevant Constitutional Law***

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted). Officers may only conduct investigatory stops if they have reasonable suspicion that "criminal activity may be afoot." *Id.* (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)); *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015). Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified. *Patrick*, 776 F.3d at 954 (quoting *Cortez,* 449 U.S. at 417); *see also United States v. Brown*, 60 F.4th 1179, 1182

8

(8th Cir. 2023) ("In analyzing whether an officer had reasonable suspicion, [courts] look to the totality of the circumstances.") (Citing *Kansas v. Glover*, 140 S.Ct. 1183, 1191 (2020)). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Martin*, 15 F.4th 878, 882 (8th Cir. 2021) (quotation omitted); *see also Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). "In short, the government must point to specific, articulable facts that reasonably suggest a crime." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry*, 392 U.S. at 27).

"In forming a basis for suspicion, officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Ortiz–Monroy*, 332 F.3d 525, 529 (8th Cir. 2003) (internal quotation marks and citations omitted). Even innocuous actions may give rise to reasonable suspicion under the totality of the circumstances. *United States v. Condelee,* 915 F.2d 1206, 1209 (8th Cir. 1990) (opining that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980)). When justifying a particular stop, police officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999) (citations omitted). Moreover,

9

"[t]he 'reasonable suspicion' necessary to justify [a *Terry*] stop 'is dependent upon both the content of information possessed by the police and its degree of reliability.'" *Navarette v. California*, 527 U.S. 393, 397 (2014) (quoting *White*, 496 U.S. at 330).

"A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). A police officer may stop a vehicle only when the officer has "'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (quoting *United States v. Martin*, 411 F.3d 998, 1000 (8th Cir. 2005)); *see also United States v. $45,000.00 in United States Currency*, 749 F.3d 709, 715 (8th Cir. 2014) ("Any traffic violation, however minor, provides probable cause for a traffic stop.") (Quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994))). Generally, a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). A minor traffic violation is sufficient to establish probable cause for an officer to conduct a traffic stop even if the stop is pretext for another investigation. *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007). An officer's actual motivation for making the stop beyond simply issuing a traffic violation is irrelevant provided that the officer has an objectively good reason for making the stop. *Id*.

"Evidence that is the 'fruit' of an illegal search or seizure is not admissible[.]" *United States v. Vega-Rico*, 417 F.3d 976, 979 (8th Cir. 2005). "Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." *Id*. (quoting *United States v. Yousif*, 308 F.3d 827, 832 (8th Cir. 2002)). Thus,

"[s]tatements that result from an illegal detention are not admissible." *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004) (citation omitted). "The causal chain between an illegal arrest and a statement given later is broken, however, "if the statement is 'sufficiently an act of free will to purge the primary taint.'" *Id.* (quoting *United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994), in turn quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). The burden of showing the admissibility of a statement(s) is born by the government. *United States v. Flores-Snadoval*, 422 F.3d 711, 714 (8th Cir. 2005).

### C.    Case law interpreting Iowa Code Section 321.353

The parties have cited several cases that have interpreted Iowa Code Section 321.353 that bear discussion. In *Rubel v. Hoffman,* 229 N.W.2d 261 (Iowa 1975) the defendant "trucker" turned from a private lane onto a highway and collided with the plaintiff's vehicle. *Rubel* did not involve a dispute over whether the lane was private, but it does generally establish a requirement that a driver "stop and yield the right of way when emerging from a private lane." *Id* at 263. Relying on *Rubel*, in *Rowlings v. Sims*, a similar case where a driver entered a public highway from a private road, the Iowa Supreme Court concluded that the presence of a pile of snow did not excuse the defendant from stopping to ascertain whether there was oncoming traffic before entering the public highway. 732 N.W.2d 882 (Iowa 2007.)

*State v. Sims*, 173 N.W.2d 127 (Iowa 1969) is the more helpful of the two *Sims* cases. In *State v. Sims,* the defendant was convicted of carrying a loaded gun on a public highway. The gun was found on the front seat of a car in the parking lot of a drive-in restaurant. *State v. Sims* held:

> The state contends the drive-in parking lot is a public highway. In section 321.1(48) Code of Iowa, street or highway is defined as "the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for

11

purposes of vehicular traffic." Although the statutory definition is limited to the purpose of chapter 321, it is in accord with the general definitions of a highway. 39 C.J.S. Highways s 1, 909-916. We therefore apply this definition to section 110.23 and hold a parking lot for a drive-in restaurant is not a public highway.

The public has no right to use a drive-in parking lot for vehicular traffic. It is privately owned. There is implied permission for the public to use the lot to do business with the proprietor. Such a parking lot is a private road or driveway as defined in section 321.1(49) as "every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons."

*Id.* at 128. The nature and configuration of the drive-in parking lot is not described. The relevant feature relied on by *State v. Sims* was the private ownership of the lot and not its physical configuration or the extent to which drivers used (or abused) the implied permission to access the lot.

In *State v. Brown,* 870 N.W. 687 (Iowa Ct. App. 2015), the defendant sought to suppress evidence seized when law enforcement searched her vehicle in a private parking lot where they had witnessed a possible open container violation. At issue in *Brown,* as in the case at bar, was whether the private parking lot fell within the definition of "public street or highway." Relying on *State v. Sims*, *Brown* held:

In its ruling on Brown's motion to suppress, the district court held that the parking lot in question had sufficient public use to come within the definition of "public street or highway." We disagree.

Our supreme court considered a similar situation in *State v. Sims*, 173 N.W.2d 127, 128 (Iowa 1969). In *Sims*, the defendant was in an automobile in the parking lot of drive-in restaurant when a police officer noticed the defendant had a gun in the vehicle. 173 N.W.2d at 128. The defendant was charged with violation of Iowa Code section 110.23 (1966), which prohibited persons from "hav[ing] or carry[ing] any gun in or on any vehicle on any public highway." *Id.* The court considered the definition

of public highway as provided by the Iowa Code, the same definition applicable here, and held the parking lot of a private restaurant is not a public highway. *Id.* The court found:

> The public has no right to use a drive-in parking lot for vehicular traffic. It is privately owned. There is implied permission for the public to use the lot to do business with the proprietor. Such a parking lot is a private road or driveway as defined in section 321.1 [(54)] as "every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons."

*Id.*

Here, the public had implied permission from the owner to park in the lot at certain times, but otherwise the use of the lot was restricted to persons having permits from the proprietor that allowed them to park there. Thus, the lot was not "open to the use of the public, as a matter of right" as required by the definition for a public street or highway. Even when the lot was open to the public, it was not open "for purposes of vehicular traffic." Moreover, Officer Garrett's statement that the public could "get to there easily by the street" is inapposite—the definition of public and private depend on who has the right to use the area, not whether one is physically able to obtain entrance into the area. This was a privately owned parking lot and clearly not an area between property lines.

Because the privately-owned parking lot does not fall within the definition of "public street" or "highway" contained in Iowa Code section 321.248(1), the statute prohibiting open containers was inapplicable to Brown, and the officers did not have probable cause to search the vehicle.

*State v. Brown*, 870 N.W.2d 687 (Iowa Ct. App. 2015).

## D. *Analysis*

### 1. *Law enforcement had probable cause to initiate the stop.*

Most of the elements of an alleged violation of 321.353 are not in dispute. Here, the driver of the Chevy Cruz clearly did not stop immediately prior to driving onto the

13

sidewalk.  The driver also did not stop immediately prior to driving onto a highway.  There is no requirement that a driver interfere with traffic on the sidewalk or the street to commit the offense.  Like running a red light, the offense is the failure to stop, not creating a safety concern.  The sole question about the alleged violation is the character of the path the Cruz traveled immediately prior to emerging onto 6th Street.  More specifically, was the Chevy Cruz "emerging from a private roadway, alley, driveway, or building" or "enter[ing] . . . a highway from a private road or driveway?"  Iowa Code § 321.353.[2]

I agree with Defendant's proposition that the adjective "private" modifies each of the nouns in the series that follows.  *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").  However, I respectfully disagree with Defendant's contention that, in essence, the parking lot of Jim's Foods is not sufficiently private to make Section 321.353 applicable to vehicles crossing the sidewalk or entering a highway.

Defendant contends that the Jim's Foods parking lot is "open for public traffic" such that the statute is inapplicable, as it would be to "streets" or "highways."  (Doc. 21-1 at 6.)  Defendant points to physical features of the parking lot and the ingress/egress onto 6th Street (and onto two other streets) that he believes make the parking lot seem more like the Platonic ideal of a street or a highway and not like a driveway.  I do not

---

[2] It is not quite clear whether the Government is relying on a violation of subsection (1) or (2) of Section 321.353.  Nor is it clear, for that matter, whether this Section would require a driver to stop twice, i.e., once "immediately prior to driving on the sidewalk" and once again "immediately prior to driving on said highway."  Here the Court need not pause to wrestle with these concerns because Defendant is only arguing about the character of the parking lot and because the driver did not stop either before the sidewalk or before entering 6th Avenue.

14

doubt that it is possible that some drivers with no business with Jim's Foods or the other property owners sometimes use the parking lot to go from place to place in southwest Cedar Rapids or engage in activities unrelated to the businesses. The map in Defendant's Exhibit C shows it may be possible to cut through the lot to travel from one street to another. The parking lot is indeed a block long and not a narrow one- or two-lane path one might normally associate with a "private road" or "driveway." On the other hand, Exhibit 2 clearly depicts a concrete sidewalk between the curb and the parking lot. It also depicts a sloped concrete apron that appears to facilitate vehicular access to the parking lot at a specific spot. Exhibit 2 also shows that sloped apron as the only spot for a vehicle to enter or exit the parking lot on 6th Street without jumping a curb, driving across a grass parking strip, and navigating over parking blocks. Thus, the entrance/exit from which the Chevy emerged does have physical features consistent with a driveway or private road.

Fortunately, the Court need not resort to assessing whether Jim's Foods' lot sufficiently approaches an ideal instantiation of a private road or driveway. Here the statute and the Iowa courts that have interpreted it make clear the parking lot is a private road or driveway. The following definitions from Iowa Code Section 321.1 will further this discussion:

> 54. "Private road" or "driveway" means every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons. . . .
> 78. "Street" or "highway" means the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic.

Here, the Jim's Foods parking lot meets the definition of a "private road" or "driveway" because it is in (1) in private ownership, and (2) it is used by the owner and those having

express or implied permission from the owner and not by others. No one inquired how Sgt. Merritt knew the ownership status of the parking lot. Presumably he had not performed any title research. However, Sgt. Merritt did testify that the owners of the property are able to have "people" towed from the parking lot, "trespass" people from the lot, block access to the lot for maintenance. Moreover, the maintenance was performed by the property owners and not the City of Cedar Rapids. This sort of proprietary control is consistent with private ownership of the parking lot. Moreover, the photos in the exhibits depict an area one would reasonably assume is private property. For example, the photos show signs for the various businesses as well as advertising cigarettes and liquor. (Def. Ex. A.)

Importantly, this case is not a title dispute about who owns Blackacre (or, in this case, Jim's Foodacre). The nature of the parking lot, the sidewalk, and Sixth Avenue are material to this report and recommendation. However, this case is not about proving beyond a reasonable doubt that the lot is a private driveway or, ultimately, that the Chevy Cruz's driver committed the offense. Perhaps the driver could avoid conviction if it was established at trial that the parking lot was public property. But such a determination is not the point of this report and recommendation. The point is to determine whether there was probable cause or reasonable suspicion[3] for the stop.

Defendant argues:

> Whether a parking area, particularly one that is wide as a city block, meets the definition of "street" or "highway" depends upon whether the public may use "any part" of the parking lot for vehicular traffic. When property

---

[3] The parties' arguments mention both probable cause and reasonable suspicion. This is not a case that turns on the distinction between these concepts. As stated above, "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Martin*, 15 F.4th 878, 882 (8th Cir. 2021). Thus, whether officers had probable cause or merely reasonable suspicion, is not significant.

> owners do not impede drivers from using a portion of their parking area for vehicular traffic — as here, where drivers are free to drive through the area while traveling from one public street to another — the parking lot becomes a "street" or "highway" as defined by the Iowa Code.

(Doc. 24 at 2.) I respectfully disagree. Defendant's analysis misses the mark when he asserts that the parking lot meets the definition of "street" or "highway" because "the public may use 'any part' of the parking lot for vehicular traffic." (*Id.*) To be a "street" or a "highway" the area used for vehicular travel would have to be open to public "as of right" under Section 321.1(78). There is nothing in this record to suggest that, even if the motoring public regularly uses the parking lot as a route to travel from place to place rather than to park and patronize the businesses, that they are doing so as a matter of right, rather than under express or implied permission (however loosely policed) by the owner of the lot. On the contrary, Sgt. Merritt's testimony established that the owner had exercised ownership over the parking lot and excluded traffic to maintain the lot. Private maintenance of the lot and exclusion of traffic by a private owner are not consistent with the public's right to use the parking lot as a highway. More importantly, Sgt. Merritt's reasonable conclusion that Jim's Foods' parking lot is a "private road" or "driveway" contributed to the probable cause or reasonable suspicion to support the traffic stop.

I conclude that Sgt. Merritt had at least reasonable suspicion to believe these features (i.e., the parking lot, sidewalk, streets, and alleys) were, in fact, the features he identified. Defendant's efforts to distinguish the principal cases are unavailing. Defendant argues, "In *State v. Sims*, 173 N.W.2d 127, 128 (Iowa 1969), the court held that a drive-in parking lot was not open to vehicular traffic, but there is no suggestion that a portion of the parking lot in *Sims* was a block-long area connecting three different public streets." For the reasons discussed above, the physical aspects of parking lot (i.e., it is a block long and connects to three streets) are immaterial. Indeed, the physical

configuration of the drive-in's lot in *State v. Sims* was not stated. Rather, the key in *State v. Sims* was that use of the parking lot was by implied permission rather than by right.

Defendant attempts to distinguish *State v. Brown* on the basis that the *Brown* parking lot was "restricted to persons having permits from the proprietor that allowed them to park there." *State v. Brown*, 870 N.W.2d 687 (Iowa Ct. App. 2015). Defendant points out that no permits are required to use the Jim's Foods parking lot. This distinction ignores the definition of "private road" or "driveway" which includes "every way or place in private ownership and used for vehicular travel by the owner and those having express *or implied permission* from the owner but not by other persons." Iowa Code § 321.1(54) (emphasis added.) The fact that the public uses the parking lot with implied permission rather than by express permit, as in *Brown*, does not change the lot's character to a street or highway.

Defendant attempts to distinguish *Rowling v. Sims* solely on the basis that the private driveway did not involve a "block-long area which drivers are free to use when they travel from one street to another." (Doc. 24 at 3.) For the reasons discussed above, neither of these features is material to distinguishing a "private road" or "driveway" from a "street" or "highway."

Here, law enforcement had at least reasonable suspicion to stop the Chevy Cruz after having witnessed the vehicle cross the sidewalk and enter 6th Street SW without stopping because they reasonably believed the parking lot was a private road or driveway. Thus, I recommend the Court conclude that there was no violation of the Fourth Amendment attendant upon the stop. Since there was a valid basis for the stop, there is no poisonous tree, and the Court should not suppress any of the resulting evidence.

18

## 2. If mistaken, were the officers unreasonable in their interpretation of Iowa Code Section 321.353?

Should the Court disagree with my interpretation of Iowa Code Section 321.353 and/or its application to the facts presented, it must address whether the officers made an objectively reasonable mistake about the law. As this Court has previously noted:

> "[I]n mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). This calculation "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *Id.* (internal quotation marks omitted). Importantly, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce," *Heien v. North Carolina*, 574 U.S. 54, 67 (2014), and thus the "Fourth Amendment tolerates only [objectively] reasonable mistakes." *Id.* at 66. Again, based on the facts known to Officer Merritt at the time of the traffic stop including the stolen vehicle report filed at the request of Enterprise and the unique situation with two license plates registered to the same VIN, he could objectively reasonably believe, even mistakenly, that the van was stolen, thus warranting a traffic stop. *See also Williams*, 929 F.3d at 544 (finding that an officer's mistaken reading of a stolen car report was objectively reasonable based on the totality of the circumstances and warranted the stop at issue).

*United States v. James*, No. 20-CR-49-CJW-MAR, 2021 WL 3408486, at *6 (N.D. Iowa Aug. 4, 2021), aff'd, 52 F.4th 1035 (8th Cir. 2022).

I have concluded that Sgt. Merritt's interpretation of the Iowa Code Section 321.353 is correct and consistent with the interpretation of the decisions cited above. In light of this, it is difficult to conclude this interpretation might be unreasonable. Among other things, Sgt. Merritt's interpretation is consistent with interpretation of the Iowa Driver's Manual published by the Iowa Department of Transportation. (Exhibit 2.) While the language of the statute (and not the Iowa DOT manual) constitutes the law, the manual's gloss on the statute makes it harder to say Sgt. Merritt's belief is unreasonable.

19

In addition, there are factors that point to the objective reasonableness of his conclusion. First, Sgt. Merritt pointed to facts that showed the parking lot is private, despite the evidence Defendant relies upon to establish its alleged public character. For example, Sgt. Merritt testified that the lot is privately owned and not owned by the city or the county. (Merritt's Hr'g Test. at 6.) The owners of the lot had towed cars and "trespassed" (i.e., excluded by legal means) certain people who had engaged in objectionable conduct. The owner of the lot had maintained it and blocked access to the lot to repair it. All these facts were reasonably known to Officer Merritt and are consistent with "private ownership" which is the essence of the statute.

Second, rather than focus on the "private ownership" aspect of the statute, Defendant's preferred approach focuses on whether the persons who use it have the express or implied permission of the owner. Even if Defendant is correct that the private character of a driveway or road can somehow be eroded by its use as a street or highway, that transformation may not be so apparent to law enforcement that it destroys reasonable suspicion or probable cause. Similarly, even if the fact that the parking lot stretches an entire city block makes it look like something other than an idealized version of a "driveway" or "road," that appearance does not destroy reasonable suspicion or probable cause. In other words, the facts that the lot is accessible from multiple streets, that it could be used to travel from on street to another, that it is a block long, do not negate the other evidence that Sgt. Merritt reasonably relied on to initiate the traffic stop to investigate the alleged violation. That is, Sgt. Merritt had a reasonable, good faith belief that that the parking lot was a private driveway, and he witnessed the Chevy Cruz fail to stop before entering 6th Avenue. Thus, even if he is mistaken about whether the parking lot is legally a private driveway or mistaken about how the statute determines if the lot is a private driveway, such a mistake is objectively reasonable.

### 3. Defendant's Statements

Defendant claims his statements are the fruit of the poisonous tree. The Government does not address the issue. Here, the evidence does not show Defendant was in custody at any relevant time. Nor does it show that Defendant was ever *Mirandized*. It is also unclear what, if anything, Defendant told law enforcement the following day or whenever he communicated with Officer Jupin.

Evidence obtained as a result of an unconstitutional search or seizure must be suppressed as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F.Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). However, the evidence must be suppressed only if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)).

Here, the record is devoid of evidence of what Defendant said, when he said it, where he said it, to whom he said it, whether the statements were post-*Miranda,* or whether they were somehow attenuated. If the Court decides the stop was constitutional, then there is no poisonous tree and Defendant's only asserted basis for suppression of the statements disappears and the statements should not be suppressed. If, however, the Court decides the search and/or seizure of the drugs was unconstitutional, then the Government has not refuted the assertion that the statements are the fruit of the poisonous tree, and the statements should be suppressed.

## IV.    CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress.  **(Doc. 21.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Crim. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir.  2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 2nd day of January, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa