# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-CR-31-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| ANTONIO CLARENCE ROBERTSON, | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on a Report and Recommendation (R&R) (Doc. 31) by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's Motion to Suppress (Doc. 21).

Judge Roberts issued his R&R on January 2, 2025. On January 15, 2025, defendant filed his objections to the R&R. (Doc. 35). The government did not file any objections.

For the following reasons, the Court overrules defendant's objections and adopts Judge Roberts' R&R.

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also

receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a *de novo* review of that portion, giving "fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (internal quotation marks omitted); *see also Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III.    DISCUSSION

#### A.    *Defendant's Objections to Findings of Fact*

Defendant objects first to Judge Roberts' finding of fact, crediting testimony from Sgt. Merritt (who testified at the evidentiary hearing), that "if someone were traveling

2

on Sixth Street, they couldn't drive into that parking lot to attempt to bypass traffic." (Doc. 35, at 1–3) (quoting Doc. 31, at 3) (cleaned up). Defendant argues Judge Roberts erred by relying on Merritt's testimony on this issue because Merritt was a fact witness who, according to defendant, "may not express opinions that do not fall within the lay opinion rule." (Doc. 35, at 1–2) (citing Federal Rules of Evidence 602 & 701(a)). Defendant's general argument here is that Merritt did not have personal knowledge regarding what he was testifying about.

But the rules of evidence "do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Henderson*, 471 F.3d 935, 938 (8th Cir. 2006) (per curiam) (quoting *United States v. Matlock*, 415 U.S. 164, 172–73 (1974)). The Court can rely on evidence from a suppression hearing even though that evidence may not be admissible at trial. *See id.* Judge Roberts, therefore, properly relied on this type of evidence here. Thus, defendant's objection, insofar as it is made under the federal rules of evidence, is overruled.

As Judge Roberts noted, however, Merritt testified to some personal knowledge on the matter. Merritt said that the owners are able to have people towed from the parking lot, "trespass" people from the lot, and block access to the lot for maintenance. (Doc. 31, at 16). Thus, to the extent it is material, Merritt appears to, in fact, have some personal knowledge in this area.

This factual objection is tied closely to the ultimate legal conclusion here. Essentially, defendant wants the Court to conclude that this factual finding was improper, and, as a result, the stop was unconstitutional because the officers would not have a reasonable suspicion that a crime had been committed, because no crime would have been committed. But, as Judge Roberts explained, even if Merritt is ultimately wrong, and the parking lot was a public street or highway in the context of Iowa Code Section 321.353, the evidence will still not be suppressed if Merritt's mistake was objectively

3

reasonable. *See United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) ("[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one."). On this issue, Judge Roberts stated:

> Sgt. Merritt had a reasonable, good faith belief that that the parking lot was a private driveway, and he witnessed the Chevy Cruz fail to stop before entering 6th Avenue. Thus, even if he is mistaken about whether the parking lot is legally a private driveway or mistaken about how the statute determines if the lot is a private driveway, such a mistake is objectively reasonable.

(Doc. 31, at 20). The Court agrees with Judge Roberts on this front. Thus, to the extent defendant's factual objection is tied in with the legal analysis here, the Court overrules it for this additional reason.

Defendant next objects to Judge Roberts' factual finding that a "wide, shallow-sloped driveway apron crosses the sidewalk to permit vehicular traffic to enter and exit the parking lot." (Doc. 35, at 3) (quoting Doc. 31, at 3). Judge Roberts cites to the government's exhibit 1 to support this statement. Defendant objects to this finding, arguing that there is no driveway, so the portion Judge Roberts calls a "driveway apron" cannot be a driveway apron—because a driveway apron, by definition, must be connected to a driveway. (Doc. 35, at 3).

This objection is tied to defendant's objections to Judge Roberts' conclusions of law. The real issue in this case is whether the officers had probable cause, or a reasonable suspicion, sufficient to stop the vehicle in which defendant was riding. And that turns on whether the vehicle was turning off of a "private roadway, alley, driveway, or building" under Iowa Code Section 321.353. The name ascribed to this strip of concrete is immaterial to the analysis of whether the lot fits a category in Section 321.353. It is

4

more of a result of the legal analysis than a factual finding in this case. The issue, ultimately, is whether the lot fits a category in Section 321.353—not what this strip of concrete is called. Thus, this factual objection is either immaterial to the analysis, or a conclusion of the legal analysis. Accordingly, defendant's objection here is overruled because Judge Roberts' conclusions, and this Court's conclusions, do not turn on the label applied to a strip of concrete.

### B. *Defendant's Objections to Conclusion of Law*

Defendant objects, essentially, to Judge Roberts' ultimate conclusions of law and several underlying conclusions. That is, defendant objects to Judge Roberts' finding that the officers' stop of the vehicle was constitutional, generally based upon defendant's disagreement with the analysis in the R&R regarding Iowa Code Section 321.353. (Doc. 35, at 4–6). Defendant also objects to Judge Roberts' finding that, even if the officers did not have a reasonable suspicion or probable cause to stop the vehicle, the officers' mistake was an objectively reasonable one. (*Id.*, at 7).

The issue is whether the vehicle was exiting a "private roadway, alley, driveway, or building." Iowa Code § 321.353(1). Defendant argues that the parking lot at issue "is not a road, a driveway, an alley, or a building" but instead "[a] parking lot is a parking lot." (Doc. 35, at 4). This argument seems reasonable enough.

But, as Judge Roberts recognized, Iowa Supreme Court precedent shows that, indeed, a parking lot can be defined as more than just a parking lot. The court in *State v. Sims*, discussing a drive-in restaurant's parking lot, held that "[s]uch a parking lot is a private road or driveway[.]" 173 N.W.2d 127, 128 (Iowa 1969). The *Sims* court focused more on the private ownership of the lot than the physical features of the lot in coming to this conclusion. *See id.*

Here, Judge Roberts found, quite reasonably, that the parking lot at issue was privately owned. He based this finding on Merritt's testimony and the various exhibits.

5

Merritt testified that the owners of the stores could have people towed from the parking lot, that the owners could have people removed from the lot, that the owners could block access to the lot for maintenance, and that the owners in fact performed maintenance on the lot. (*See* Doc. 31, at 16). Further, the photo exhibits show an area which looks like private property—or, at least, what a reasonable person would conclude to be private property. This Court agrees with Judge Roberts' conclusion on this front, especially given the *Sims* court's focus on ownership, and lack of focus on physical features. *See Sims*, 173 N.W.2d at 128.[1]

Defendant also objects to the conclusion that the parking lot was "not impliedly open to vehicular traffic from one adjacent street to another." (Doc. 35, at 6). Defendant argues that the record includes no evidence backing this conclusion. First, that is not exactly what Judge Roberts concluded. He concluded that, even if vehicles regularly use the lot to travel from one road to the other, there is nothing in the record showing that "they are doing so as a matter of right, rather than under express or implied permission (however loosely policed) by the owner of the lot." (Doc. 31, at 17). The conclusion here is not so much that the lot was not impliedly open to traffic, but instead that this implied access took the form of permission as opposed to a right. Second, there is evidence in the record here supporting Judge Roberts' conclusion. Merritt testified that people could not legally drive through the lot to go from street to street. Merritt also testified that the owners could block access to the lot for maintenance. As Judge Roberts

---

[1] Defendant argues that *Sims* is distinguishable because "there is no suggestion in *Sims* that a portion of the parking lot was an available route connecting two public streets" whereas, here, "cars are able to drive between two streets by traveling through the lot in question[.]" (Doc. 35, at 5). Again, defendant's argument is focused on the wrong aspect of the case. The *Sims* case informs the holding here for two main reasons: (1) it shows that parking lots can be considered a "private road or driveway" and (2) it shows what the focus of the inquiry must be: whether the lot in question is privately owned. *See Sims*, 173 N.W.2d at 128. The number of entrances or exits a parking lot has or the number of streets to which the lot is connected does not factor into the equation, at least not as a principal consideration.

6

noted, "[p]rivate maintenance of the lot and exclusion of traffic by a private owner are not consistent with the public's right to use the parking lot as a highway." (*Id.*). The Court agrees with the analysis and conclusion in the R&R on this issue. Thus, defendant's objection to Judge Roberts' analysis and conclusion here is overruled.

Alternatively, and perhaps most important, Merritt's belief that the parking lot was privately owned was certainly reasonable. Even if Merritt, Judge Roberts, and this Court are all ultimately wrong in concluding that the parking lot falls within the categories in Iowa Code Section 321.353 ("a private roadway, alley, driveway, or building"), this mistake is objectively reasonable. As Judge Roberts aptly noted, the fact that he (and now this Court) found that Merritt's interpretation of Section 321.353 was correct makes it "difficult to conclude this interpretation might be unreasonable." (Doc. 31, at 19). This Court could not have put it better. Thus, defendant's final objection—arguing the officers' interpretation of the law was not objectively reasonable—fails, and is overruled.

Defendant's objections are overruled, and the Court adopts Judge Roberts' R&R.

### IV. CONCLUSION

Upon conducting a de novo review of the portions of Judge Roberts' R&R to which defendant objected, and a review of the remainder of the R&R for clear error, the Court **overrules** defendant's objections and **adopts** the R&R. Defendant's Motion to Suppress (Doc. 21) is **denied**.

**IT IS SO ORDERED** this 28th day of January, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa